# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS MINE SUBSIDENCE INSURANCE FUND,<br><br>Defendant. | Case No. 20-cv-3281 |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Union Pacific complains against the Illinois Mine Subsidence Insurance Fund ("IMSIF") as follows:

### INTRODUCTION

1. On September 16, 2020, IMSIF filed a complaint in the Circuit Court of Macoupin County, Illinois (Case No. 2020 LM 63) ("Hill Complaint") which seeks reimbursement from Union Pacific for a mine subsidence claim. On October 14, 2020, Union Pacific removed the Hill Complaint to this Court. This Court and a state appellate court previously have fully addressed the same legal claims raised by the Hill Complaint and found Union Pacific is not liable for such claims. Despite these binding rulings, IMSIF again has filed a lawsuit seeking reimbursement for an alleged mine subsidence claim.

2. By this Complaint, Union Pacific seeks declarations and injunctive relief to prevent IMSIF from continuing to file duplicative, unnecessary, and harassing lawsuits like the Hill Complaint. This lawsuit seeks no specific relief for the claim brought in the Hill Complaint. Union Pacific will seek judgment in the Hill case specific to the parties in that case

by means of answer and motion without seeking a declaration or injunction (unless the Court rules that Union Pacific must do so to avoid waiver or to comply with Federal Rules of Civil Procedure 12 and 13).

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because: (1) there is complete diversity of citizenship between Union Pacific and IMSIF; and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs.

4. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## BACKGROUND

### I. IMSIF

5. The Illinois legislature established IMSIF to provide reinsurance for insurance company for damage caused by mine subsidence. *See* Illinois Mine Subsidence Act, 215 ILCS 5/543.

### II. Superior Coal

6. Superior Coal operated four coal mines in Macoupin County from 1904 through 1953. Superior was dissolved in 1957. In prior litigation, IMSIF alleges that Superior's parent corporation, the Chicago and North Western Railway Company (CNW), and its corporate successor, Union Pacific, are liable for all the acts of Superior.

7. In 1995, CNW was merged into Union Pacific. From about 1996 to 2008, Union Pacific settled approximately 21 subsidence claims with IMSIF for less than $1,000,000 in total. In releases, Union Pacific disclaimed any liability for these claims and the parties agreed that the payments would not be construed as an admission of liability by Union Pacific.

### III. Gillespie State Court Litigation

8. In 2009, after a school in Gillespie, Illinois suffered mine subsidence damage, IMSIF submitted a multi-million-dollar claim to Union Pacific, the first such large claim submitted by IMSIF. Union Pacific determined to no longer pay IMSIF's mine subsidence claims, because Union Pacific did not believe it was liable for such claims as a matter law. IMSIF and the Gillespie School District then filed *Gillespie Community Unit School District No. 7 v. Union Pacific Railroad* ("*Gillespie*").

9. In *Gillespie*, IMSIF alleged that CNW (and thus Union Pacific) was liable for damages resulting from subsidence of Superior's former mines because: (1) CNW agreed to assume all of Superior's liabilities including contingent liabilities for future subsidence claims as part of Superior's dissolution; (2) CNW was a direct participant in Superior's business operations; or (3) CNW operated CNW and Superior as a single entity so that the two corporations were "alter egos" of each other and, therefore, the court should "pierce the corporate veil" between Superior and its stockholder CNW, and hold CNW liable for Superior's debts.

10. *Gillespie* produced two appellate opinions, 2012 IL App (4th) 110142-U ("2012 Opinion") and 2015 IL App (4th) 140877 ("2015 Opinion"). The 2015 Opinion decided several issues in favor of Union Pacific including whether it could be liable on the assumption of liability theory, which is pled in the Hill Complaint.

11. The Illinois Appellate Court found CNW only agreed to assume Superior's perfected, past liabilities at the time of the Superior's dissolution in 1957, and CNW did not agree to assume unknown, contingent liabilities such as subsidence claims. 2015 Opinion ¶¶ 103-114.

3

12. The Illinois Appellate Court further found that CNW was not liable under a theory of direct participation, which requires a causal connection between the business decisions of the parent and the injury in question. *Id.* ¶¶ 116-19.

13. On the alter ego claim, the Illinois Appellate Court reversed a summary judgment decision in favor of Union Pacific and remanded the case for further proceedings on whether Superior was a "mere instrumentality" of CNW and whether piercing the corporate veil was necessary "to thwart injustice or bad faith." *Id.* ¶¶ 8, 173-74, 179.

14. Before those proceedings continued on remand, Union Pacific settled *Gillespie*.

## IV.     2017 Central District of Illinois Litigation

15. IMSIF again sued Union Pacific for mine subsidence claims in *Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co.*, No. 17-CV-3199, ("the 2017 Case") which resulted in a 82-page opinion and judgment in favor of Union Pacific, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019) ("2019 Opinion").

16. In the 2017 case, IMSIF sought reimbursement as a subrogee to Country Mutual Insurance Company, which paid claims to two homeowners: the Bessermans (for $163,000) and the Bertolinos (for $71,400).

17. In the 2017 Case, IMSIF raised the alter ego issues that had been remanded in *Gillespie*. The parties tried the issue and the Court ruled that IMSIF failed to establish the alter ego exception to the general rule of no liability for Superior's shareholder CNW or CNW's successor Union Pacific.

18. IMSIF also amended its complaint in the 2017 Case to allege a claim based on the *de facto* merger doctrine, which had not been previously litigated. The parties tried that issue as

well, and the Court ruled that IMSIF had failed to establish that a *de facto* merger occurred. The Court thus entered judgment for Union Pacific on all claims.

19. IMSIF filed a notice of appeal to the Seventh Circuit but voluntarily dismissed the appeal in January 2020. 2020 WL 1682791 (7th Cir. Jan. 6, 2020).

**V. Settlement Negotiations**

20. The property damage losses at issue in the 2017 Case totaled $234,400, however, there was no discussion between the two parties about settling those claims alone. All settlement negotiations involved the entire amount in controversy between IMSIF and Union Pacific.

21. During negotiations, IMSIF stated that its total claim was worth $46 million to $234 million. Based on this valuation and a litigation risk discount, IMSIF demanded $69,631,344 for a lump sum settlement for current and future subsidence claims.

22. IMSIF explained the amount as follows: "Because the Fund is confident that it will succeed on its *alter ego* or *de facto* merger successor liability claims against Union Pacific, there is a very high probability that 100% of past, present and future subsidence damage associated with Superior's operations will be ultimately borne by Union Pacific if this matter is litigated to its conclusion."

23. During settlement discussions, the only parties involved were IMSIF and Union Pacific. Property owners were not involved in negotiations. Individual claims were not discussed. Union Pacific understood that IMSIF had already reimbursed the insurers that had paid out claims to the property owners.

**VI. Pending IMSIF Claims Tendered To Union Pacific**

24. IMSIF has tendered approximately 58 subsidence claims to Union Pacific, with a value of approximately $5.5 million. For 25 of these claims, Union Pacific agreed to toll the

statute of limitations while the parties finished the trial in the 2017 Case. Union Pacific expected that trial to resolve IMSIF's entire claim, as was the parties' understanding during settlement negotiations.

25.     In August 2020, Union Pacific declined to enter any more tolling agreements with IMSIF because the 2017 Case resolved the outstanding issues between the parties and IMSIF had dismissed its Seventh Circuit appeal.

### VII.     Hill Complaint

26.     The Hill Complaint asserts three bases for liability against Union Pacific, that: (1) Union Pacific's corporate predecessor, CNW, expressly assumed the liabilities of its subsidiary, when Superior was dissolved in the 1950s; (2) Union Pacific assumed the liabilities of Superior as a result of Superior being CNW's alter ego; and (3) Union Pacific is a successor to Superior's liabilities through a "related entity." Hill Complaint, ¶¶ 12-18, 20-28, 3-37.

27.     IMSIF's first theory of liability in the Hill Complaint is based on the alter ego doctrine, the exact issue decided in the 2017 Case (2019 Opinion). The second theory of liability, assumption of liabilities, again raises the exact issue decided in *Gillespie* (2015 Opinion) in favor of Union Pacific. The third theory of liability for "Successor Liability for a Related Entity" does not allege any third theory but just asserts matters which are not contested, namely that Union Pacific is the successor in interest of CNW, an issue the Illinois Appellate Court addressed during an appeal of motion to dismiss decisions in *Gillespie. See* 2012 Opinion.

# COUNT I
# DECLARATION OF COLLATERAL ESTOPPEL

28. The 2015 Opinion in *Gillespie* decided all facts and legal propositions necessary to resolve the "assumption of liability" theory described in Paragraphs 9-11 above; accordingly IMSIF and its privies are barred by collateral estoppel from relitigating that theory.

29. The 2015 Opinion in *Gillespie* also decided all facts and legal propositions necessary to resolve the "direct participation" theory described in Paragraphs 9 and 12 above; accordingly IMSIF and its privies are barred by collateral estoppel from relitigating that theory.

30. The 2019 Opinion in the 2017 Case decided all facts and legal propositions necessary to resolve the "alter ego" and "*de facto* merger" theories described in Paragraphs 9, 13, 17, and 18 above; accordingly IMSIF and its privies are barred by collateral estoppel from relitigating either of those theories.

WHEREFORE, Union Pacific seeks a declaration that IMSIF is barred from relitigating the alter ego, de facto merger, assumption of liability, direct participation or any other theory of liability raised in *Gillespie* or the 2017 Case.

# COUNT II
# DECLARTION OF *RES JUDICATA*

31. In the 2017 Case, IMSIF did or could have raised all theories by which Union Pacific could be liable for the actions of Superior Coal and accordingly IMSIF and its privies are barred by *res judicata* from relitigating any such theory.

WHEREFORE, Union Pacific seeks a declaration that IMSIF is barred from relitigating any theory by which Union Pacific could be liable for the actions of Superior Coal.

## COUNT III
## DECLARATION IDENTIFYING PRIVIES AND REAL PARTIES IN INTEREST

32. In the Hill case and other cases where IMSIF has paid all amounts due and no other party is owed money, IMSIF is the only real party in interest and other parties are superfluous. All such parties should be dismissed as presenting no case or controversy, not being real parties in interest, and serving no purpose as parties in the case other than to complicate and confuse.

33. All homeowners whose insurers were reinsured by IMSIF and all insurers who are reinsured by IMSIF are in privity with IMSIF for purposes of applying the doctrines of *res judicata* and collateral estoppel.

34. WHEREFORE, Union Pacific seeks a declaration that all parties ultimately reinsured by IMSIF, including homeowners and insurers, are in privity with IMSIF for purposes of applying the doctrines of *res judicata* and collateral estoppel.

## COUNT IV
## INJUNCTIVE RELIEF

35. The All Writs Act authorizes this Court to "issue all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

36. The Anti-Injunction Act permits a federal court to enjoin a state court proceeding to "protect or effectuate its judgments." 28 U.S.C. § 2283. This "relitigation exception" is "founded in the well-recognized concepts of *res judicata* and collateral estoppel," and prevents relitigation of claims or issues that already have been decided by the federal court.

37. The equitable requirements for issuing an injunction are satisfied here and the injunction is appropriate under principles of equity and comity.

38. For these reasons, the court should enjoin IMSIF from directly bringing any such action or indirectly encouraging any of its insureds, lawyers, or others from doing so and should require IMSIF to give notice of such injunction to all its lawyers and insureds sufficient to bind them under Federal Rule of Civil Procedure 65(d)(2).

WHEREFORE, Union Pacific seeks an injunction barring IMSIF from filing or inciting additional lawsuits in state or federal court seeking to hold Union Pacific liable for the actions of Superior Coal.

Dated: October 20, 2020

Respectfully submitted,

**UNION PACIFIC RAILROAD COMPANY**

By: */s/ Riley C. Mendoza*
       One of Its Attorneys

Gary M. Elden, Ill. Bar No. 0728322
Riley C. Mendoza, Ill. Bar No. 6314666
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Telephone:  312.704.7700
Facsimile:  312.558.1195
gelden@shb.com
rmendoza@shb.com

***Attorneys for Plaintiff Union Pacific Railroad Company***

## CERTIFICATE OF SERVICE

    I, Riley C. Mendoza, an attorney, hereby certify that on **October 20, 2020**, I caused a true and complete copy of the foregoing **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** to be electronically filed. Notice of this filing will be sent to all parties registered on this Court's CM/ECF system. Parties may access this filing through the Court's system.

                                                                                       */s/ Riley C. Mendoza*

4810-7356-5647