## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 20-cv-3281 |
| ILLINOIS MINE SUBSIDENCE INSURANCE FUND, | ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Illinois Mine Subsidence Insurance Fund's (Fund or IMSIF) Motion to Dismiss and Strike (d/e 22) (Motion). The Fund moves to dismiss the Amended Complaint for Declaratory Judgment and Injunctive Relief (d/e 21) (Amended Complaint) for failure to state a claim (hereinafter the Motion to Dismiss) and to strike certain allegations from the Amended Complaint related to settlement negotiations between the Fund and Plaintiff Union Pacific Railroad Company (Union Pacific) (hereinafter the Motion to Strike). For the reasons set forth below, this Court recommends that the Motion to Dismiss should be ALLOWED in part and DENIED in part, and the Motion to Strike should be DENIED.

## STATEMENT OF FACTS

For purposes of the Motion to Dismiss, the Court accepts all factual allegations in the Amended Complaint as true.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).  The Amended Complaint alleges the following.

The Fund was created by Illinois statute to provide reinsurance for insurance companies that provide mine subsidence insurance to landowners.  See Illinois Mine Subsidence Act, 215 ILCS 5/532 et seq.  By contract and statute, the Fund is entitled to subrogation rights for any reinsurance provided on a claim and is authorized to sue the party responsible for the subsidence to recover the monies paid on the subsidence claims.  Amended Complaint ¶ 5.

The Superior Coal Company (Superior) was a subsidiary of the Chicago and Northwestern Railway (CNW).  Superior operated four coal mines in Macoupin County, Illinois, from 1904 to 1953 (the Mines).  In 1957, Superior was dissolved.  In 1995, CNW was merged into Union Pacific.  Union Pacific thereby became responsible for CNW's liabilities. Amended Complaint ¶¶ 6-7.

Beginning in 1996, the Fund sought reimbursement from Union Pacific for reinsurance claims paid to landowners who suffered damage to their properties due to subsidence of the Mines (Mine Subsidence Claims).

As used throughout, the term Mine Subsidence Claim(s) only refers to claims for damage due to subsidence from the Mines operated by Superior in Macoupin County.  From 1996 to 2008, Union Pacific and the Fund settled 21 Mine Subsidence Claims for less than a total of $1,000,000.00. Union Pacific denied liability and the parties agreed in the releases that the payments could not be construed as an admission of liability by Union Pacific.  Amended Complaint ¶ 7.

In 2009, the Fund presented a multimillion-dollar Mine Subsidence Claim for damage to a school in the town of Gillespie, located in Macoupin County, Illinois (2009 Mine Subsidence Claim).  Union Pacific denied liability for the 2009 Mine Subsidence Claim and refused to pay the claim. The Fund and the school district sued Union Pacific in Macoupin County, Illinois, Circuit Court.  Gillespie Community Unit School District No. 7 v. Union Pacific Railroad (Gillespie), 2012 IL App (4th) 110142-U, 2012 WL 7009965 ("2012 Opinion") and 2015 IL App (4th) 140877, 43 N.E.3d 1155 ("2015 Opinion").  The Fund was a named plaintiff in the 2009 Case.  The Plaintiffs in the 2009 Case, including the Fund, alleged that Union Pacific was liable for the 2009 Mine Subsidence Claim because Union Pacific was a successor to CNW.  Amended Complaint ¶¶ 8-9.  The Plaintiffs in the

2009 Case, including the Fund, alleged that CNW (and so Union Pacific) was liable for the Mine Subsidence Claim because:

> (1) CNW agreed to assume all of Superior's liabilities including contingent liabilities for future subsidence claims as part of Superior's dissolution [hereinafter Assumption of Liabilities]; (2) CNW was a direct participant in Superior's business operations [hereinafter Direct Participation Liability]; or (3) CNW operated CNW and Superior as a single entity so that the two corporations were "alter egos" of each other and, therefore, the court should "pierce the corporate veil" between Superior and its stockholder CNW, and hold CNW liable for Superior's debts [hereinafter Alter Ego Liability].

Amended Complaint ¶ 9.  The Circuit Court entered summary judgment in favor of Union Pacific.  The Fund appealed.

The Illinois Appellate Court for the Illinois Fourth District (Illinois Appellate Court) entered both the 2012 and the 2015 Opinions in Gillespie. The Illinois Appellate Court found that Union Pacific was not liable under the Fund's Assumption of Liabilities issue because at the dissolution of Superior in 1957, CNW only agreed to assume Superior's perfected past liabilities and did not assume responsibility for unknown, contingent liabilities such as the 2009 Mine Subsidence Claim. The Illinois Appellate Court also found that CNW was not liable under the Direct Participation Liability issue.  2015 Opinion ¶¶ 103-19, 43 N.E.3d at 1176-80; Amended Complaint ¶¶10-12.

The Illinois Appellate Court reversed summary judgment on the Fund's Alter Ego Liability issue.  The Appellate Court found that issues of fact existed that prevented summary judgment on this issue.  2015 Opinion ¶¶ 8, 173-74, and 179, 43 N.E.3d at 1189-90.  The Fund did not seek review of the Appellate Court's affirmance of the rulings against the Fund on the Assumption of Liabilities issue or the Direct Participation issue.  The parties settled Gillespie on remand without further rulings on the Alter Ego Liability issue.  Amended Complaint ¶¶ 13-14.

In 2017, the Fund sued Union Pacific in this Court for reimbursement of $235,000 in reinsurance claims paid on Mine Subsidence Claims for damage to two homes in Macoupin County (2017 Mine Subsidence Claims).  The two homes were owned by two families named Besserman and Bartolino.  Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co. ("2017 Case"), No. 17-CV-3199, 2019 WL 4015883, at *1 (C.D. Ill. August 26, 2019) (2019 Opinion).  The Fund alleged Union Pacific, as successor to CNW, was liable for the 2017 Mine Subsidence Claims under the same Alter Ego Liability issue raised in Gillespie.  The Fund also alleged that Union Pacific, as successor to CNW, was liable for damage from subsidence of the Mines because the dissolution of Superior in 1957 was a de facto merger of CNW and Superior (De Facto Merger Liability).

Amended Complaint ¶¶ 17-18.  The Fund did not pursue the Assumption of Liabilities or Direct Participation issues in the 2017 Case.  Amended Complaint ¶¶ 15-18.

The parties consented to proceed before this Court in the 2017 Case. This Court conducted a bench trial and issued findings of fact and conclusions of law.  The Court found that Union Pacific was not liable under the Alter Ego Liability issue or the De Facto Merger Liability issue.  Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co., 2019 WL 4015883 (C.D. Ill. August 26, 2019) ("2019 Opinion").  The Fund filed a notice of appeal to the Seventh Circuit Court of Appeals but dismissed the appeal in January 2020.  2020 WL 1682791 (7th Cir. January 6, 2020); see Amended Complaint ¶¶ 15-19.

During the course of the 2017 Case, the Fund and Union Pacific engaged in settlement negotiations over all of the outstanding and potential Mine Subsidence Claims.  The Fund stated that its exposure for reinsurance of Mine Subsidence Claims was between $46 million to $234 million.  The Fund made a settlement demand for $69,631,344 to settle all current and future Mine Subsidence Claims.  The negotiations were only between the Fund and Union Pacific.  The discussions were not successful. Amended Complaint ¶¶ 20-24.

During the pendency of the 2017 Case, the Fund also tendered to Union Pacific 58 Mine Subsidence Claims totaling $5.5 million (Tendered Mine Subsidence Claims). The parties agreed to toll the statute of limitations on 25 claims during the pendency of the 2017 Case. In August 2020, Union Pacific declined to continue tolling the statute of limitations on these 25 claims or any other claims. Amended Complaint ¶¶ 24-25.

On September 16, 2020, the Hill case was filed. Aurora and Anthony Hill filed an action for the use and benefit of the Fund in Macoupin County Circuit Court against Union Pacific on a Mine Subsidence Claim for damage to the Hills' residence. Union Pacific removed the action to this Court. Aurora Hill and Anthony Hill, for the Use and Benefit of Illinois Mine Subsidence Insurance Fund, as subrogee of Badger Mutual Insurance Company, C.D. Ill. Case No. 20-3274 (Hill Case) Notice of Removal (Hill Case d/e 1), Exhibit B, Complaint at Law (Hill Complaint). The Hill Complaint alleges that the Hills' insurer Badger Mutual Insurance Company (Badger Mutual) paid the Hills $45,184.15 on their Mine Subsidence Claim for damage to their home in the town of Benld, Macoupin County, Illinois. The Hill Complaint further alleges that the Fund paid Badger Mutual $45,184.15 on its reinsurance claim. The Hill Complaint seeks reimbursement to the Fund for the monies paid on the reinsurance claim.

Hill Complaint ¶¶ 49-53.  The Hill case has now been remanded to state court because the amount in controversy did not exceed the $75,000 minimum necessary to invoke federal jurisdiction.  Hill, Opinion entered September 17, 2021 (Case No. 20-3274 d/e 16).

The Hill Complaint alleges the same Assumption of Liabilities issue resolved in Gillespie and the Alter Ego Liability issue resolved in the 2017 Case.  The Hill Complaint additionally alleges that Union Pacific is liable because, at the dissolution of Superior in 1957, the mineral rights that Superior had owned in Macoupin County, Illinois, were distributed to CNW. The Hill Complaint alleges that those mineral rights were subsequently acquired by Union Pacific as part of the merger of CNW into Union Pacific. The Hill Complaint alleges that Union Pacific is liable for subsequent Mine Subsidence Claims because of the described transfer of these mineral rights (Related Entity Liability).   Amended Complaint ¶ 26 (citing Hill Complaint ¶¶ 12-18, 20-28, 3-37).

Union Pacific alleges that these bases for liability were resolved against the Fund in Gillespie and the 2017 Case:

> IMSIF's first theory of liability in the Hill Complaint is based on the alter ego doctrine, the exact issue decided in the 2017 Case (2019 Opinion). The second theory of liability, assumption of liabilities, again raises the exact issue decided in Gillespie (2015 Opinion) in favor of Union Pacific. The third theory of liability for "Successor Liability for a Related Entity" does not

allege any third theory but just asserts matters which are not
contested, namely that Union Pacific is the successor in interest
of CNW, an issue the Illinois Appellate Court addressed during
an appeal of motion to dismiss decisions in <u>Gillespie</u>. <u>See</u> 2012
Opinion.

<u>Amended Complaint</u> ¶ 27.

Based on these allegations, Union Pacific alleges five counts for
declaratory and injunctive relief.  Union Pacific, however, does not seek
any relief with respect to the <u>Hill</u> case in any of these Counts.  <u>Amended
Complaint</u> ¶ 2.  Union Pacific seeks:

1.    a declaratory judgment that the Fund is barred by issue
preclusion (collateral estoppel) from asserting the Assumption of Liabilities,
Direct Participation Liability, Alter Ego Liability, or De Facto Merger Liability
issues (collectively the Precluded Issues) in Mine Subsidence Claim
Actions against Union Pacific because the Precluded Issues were decided
in <u>Gillespie</u> and the 2017 Case (Count I);

2.    a declaratory judgment that the Fund and those in privity with
the Fund are barred by claim preclusion (res judicata) from bringing Mine
Subsidence Claims actions against Union Pacific (Count II);

3.    a declaratory judgment that (a) the Fund is the real party in
interest in all actions on Mine Subsidence Claims in which the Fund has
paid all moneys due to any other party and no other party is owed money

(Fully Paid Mine Subsidence Claims); and (b) all homeowners and insurers reinsured by the Fund on Fully Paid Mine Subsidence Claims are in privity with the Fund for purposes of issue preclusion and claim preclusion (Count III);

4.    a permanent injunction against the Fund from directly or indirectly filing any more Mine Subsidence Claims actions against Union Pacific (Count IV); and

5.    (a) a declaratory judgment that restates the declaratory judgments sought in Counts I, II, and III, and (b) declares that "based on evidence adduced in the trial that led to the 2019 Opinion (for alter ego issues) and in Gillespie (for assumption of liability issues), Union Pacific is not liable for any mine subsidence caused by actions taken or not taken by Superior before 1957." Union Pacific further prays for an injunction barring the Fund "from filing or inciting additional lawsuits in state or federal court seeking to hold Union Pacific liable based on any claim covered by the declaration sought."  (Count V).

The Fund moves to dismiss the Amended Complaint and to strike the allegations regarding confidential settlement negotiations.  The Court directed the parties to submit supplemental memoranda addressing whether the Amended Complaint alleged a case or controversy necessary

to establish subject matter jurisdiction.  <u>Opinion entered June 17, 2021 (d/e</u>

<u>27)</u>.  In the course of the supplemental briefing, the Fund asserted for the

first time in reply that declaratory relief for Union Pacific's claims was not

available under <u>Cunningham Brothers, Inc. v. Bail</u>, 407 F.2d 1165 (7th Cir.

1969).  <u>See</u> <u>Defendant's Response to Plaintiff's Brief Addressing Whether</u>

<u>the Amended Complaint Alleges a Case or Controversy in Counts III and V</u>

<u>(d/e 30)</u>, at 1-3.  The Court gave Union Pacific an opportunity to respond to

this new assertion made in reply.  <u>Text Order entered August 10, 2021</u>.

Union Pacific has done so.  <u>Union Pacific Railroad Company's Surreply in</u>

<u>Opposition to Defendant's Motion to Dismiss and Strike (d/e 33)</u>.  The

Court addresses separately its subject matter jurisdiction, the availability of

declaratory relief for Union Pacific's claims in the Amended Complaint, the

Motion to Dismiss, and the Motion to Strike.

## ANALYSIS

### Subject Matter Jurisdiction

Article III of the U.S. Constitution limits this Court's jurisdiction to

cases or controversies. A case or controversy means a concrete dispute

between adverse parties. The claims presented must "have ripened into

actual controversies between someone who has experienced (or

imminently faces) an injury and another whose actions or inactions caused

Page **11** of **37**

(or risks causing) that injury."  Sweeney v. Raoul, 990 F 3rd 555, 559 (7th

Cir. 2021).  The ripeness of a controversy depends on the fitness of the

issues for judicial decision and the hardship on the parties of withholding

court consideration. Id. at 560.

An alleged threat of imminent injury establishes a case or controversy

if the alleged circumstances demonstrate a "probabilistic injury" to the

plaintiff.  Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 681 (7th

Cir. 1992).  Those circumstances exist here.  The Fund has litigated Mine

Subsidence Claims against Union Pacific twice already; the Fund has

tendered the 58 Tendered Mine Subsidence Claims to Union Pacific

already and asked for a tolling of the statute of limitations on 25 of those

claims; Union Pacific has declined to toll the statute of limitations any

further; the Fund has made a demand for settlement which has been

rejected; and the Fund has commenced another Mine Subsidence Claim

action against Union Pacific in the Hill case.  Contrary to the Fund's

argument, the Court finds that the risk of continuing lawsuits is imminent

and meets the standard of a probabilistic injury to Union Pacific.

The issues raised in Counts I through IV of the Amended Complaint

are also fit for adjudication.  The claims are clearly defined:  The Fund is a

subrogee of each Mine Subsidence Claim, and the Fund asserts that Union

Pacific is liable for each Mine Subsidence Claim because Superior caused the mine subsidence, CNW was liable for the actions of Superior, and Union Pacific is liable as the successor to CNW. Union Pacific denies liability. The question of CNW's liability for the actions of Superior is essential to all of the Fund's Mine Subsidence Claims.  The events that form the basis for CNW's liability all occurred either on or about the time of the 1957 dissolution of Superior or before that date.  Those factual issues have been fully litigated twice to judgment on the Precluded Issues in Gillespie and the 2017 Case.  As a result, Counts I through IV raise the legal issue of the preclusive effect of the decisions and judgments in Gillespie and the 2017 Case on the Fund's ability to bring Mine Subsidence Claim actions against Union Pacific and to litigate the Precluded Issues in such cases.  The legal questions of issue preclusion and claims preclusion raised by Counts I through IV are well-defined and fit for adjudication.

The Fund argues that too many factual issues exist to establish a true controversy.  The Fund argues that some landowners may have Mine Subsidence Claims against Union Pacific.  A landowner may retain a Mine Subsidence Claim if the mine subsidence damage exceeded the contractual limit of coverage in the landowner's mine subsidence insurance policy.  In the 2017 Case, the Bessermans claimed $245,000 in mine

subsidence damage but were paid the policy limit of $163,600.00.  2019 Opinion, 2018 WL 4015883, at *1 n.1.  In this situation, the landowner would still have a claim for damages in excess of the amount received on its mine subsidence insurance claim.  The Fund argues that factual issues regarding these excess Mine Subsidence Claims by landowners inject factual issues that make the case not ripe for adjudication at this time.

The Court disagrees.  Union Pacific only seeks relief against the Fund, and, if successful, the decision will only be binding on the Fund. Landowners and primary insurers who were fully paid by the Fund have no interest in the outcome because they have been paid.  Union Pacific does not ask for relief against landowners who were not paid in full.  Therefore, no other party has any interest in the outcome; the landowner and the primary insurer have either been fully paid or the landowner retains his or her right to sue Union Pacific.  The existence of such landowner claims does not affect the fitness of Union Pacific's claims against the Fund in Counts I through IV.

The Fund argues that Union Pacific has not demonstrated any injury. The Court disagrees.  The Seventh Circuit has held that a party may be entitled to equitable relief in appropriate cases when the defendant has persistently filed harassing actions to relitigate issues that have already

been resolved.  <u>Perry Globe Auto Recycling, Inc.</u>, 227 F.3d 950, 954 (7th
Cir. 2000) (the district court "can always craft an injunction" to stop the filing
of new cases to relitigate matters that have already been resolved).  Union
Pacific alleges that it faces this exact injury, and so under <u>Perry</u>, is entitled
to seek relief to stop such injuries from the alleged actions by the Fund.

The Fund argues that Union Pacific does not allege facts showing
that it is likely to keep suing Union Pacific on the Mine Subsidence Claims.
The Court again disagrees.  The Fund has vigorously litigated the <u>Gillespie</u>
and the 2017 Case, has made a multimillion-dollar demand on Union
Pacific, has tendered the 58 Tendered Mine Subsidence Claims, and has
filed the <u>Hill</u> case.  These allegations show a determined litigant who is
going to sue Union Pacific on these claims. The question of preclusive
effect of the judgments in <u>Gillespie</u> and the 2017 Case on the Fund's ability
to sue Union Pacific on Mine Subsidence Claims is a narrow and well-
defined legal question fit for adjudication.  The Court, therefore, has subject
matter jurisdiction to address Union Pacific's allegations in Counts I through
IV.

The claims alleged in Count V of the Amended Complaint raise
additional factual issues that are not ripe for adjudication.  Union Pacific
asks in Count V for a declaratory judgment that restates the declaratory

judgments sought in Counts I, II, and III, and, in addition, that, "based on evidence adduced in the trial that led to the 2019 Opinion (for alter ego issues) and in Gillespie (for assumption of liability issues), Union Pacific is not liable for any mine subsidence caused by actions taken or not taken by Superior before 1957." Union Pacific further prays for an injunction barring the Fund "from filing or inciting additional lawsuits in state or federal court seeking to hold Union Pacific liable based on any claim covered by the declaration sought." Amended Complaint, at 9, Count V Prayer for Relief.

Union Pacific asks in Count V for a judgment that Union Pacific is not liable for any mine subsidence caused by Superior. This request for relief is not limited to the legal issue of the preclusive effect of the judgments in Gillespie and the 2017 Case. This prayer asks for a factual finding of non-liability on the merits of all Mine Subsidence Claims. Union Pacific bases its claim for a factual finding of nonliability on Gillespie and the 2017 Case. This Court in the 2017 Case and the Appellate Court in Gillespie found for Union Pacific on the Precluded Issues. If the Fund could present a different basis for liability besides the Precluded Issues, then the Court could not resolve this issue of liability based solely on the decisions and judgments in Gillespie and the 2017 Case. Therefore, Union Pacific would

need to prove that no other viable theories of liability exist besides the Precluded Issues in order to prevail on Count V.

The proof of such a claim would necessarily require evaluating all possible theories of liability that the Fund might bring. The Fund, for example, alleged that Union Pacific is liable under a Related Entity Liability theory in the Hill case. The Court would need to decide the validity of the Related Entity Liability theory, and any other theory the Fund might be able to develop, to establish Union Pacific's factual nonliability on all future Mine Subsidence Claims. Adjudicating the merits of all possible theories of liability that might be brought effectively asks for an advisory opinion about hypothetical legal theories the Fund might raise in the future rather than a decision on a concrete question of the preclusive effect of the judgments in Gillespie and the 2017 Case. For this reason, Count V fails to allege a case or controversy, at least with respect to the portion of the prayer that asks for a finding of nonliability. The remainder of the prayer for relief in Count V only repeats the prayer for relief sought in Counts I through III and request for an injunction similar to the injunction sought in Count IV. The Court therefore recommends dismissal of Count V for failure to allege a case or controversy and for being repetitive of Counts I through IV.

Union Pacific relies heavily on cases involving contract disputes to support its position that Count V alleges a case or controversy. See e.g., Amling v. Harrow Industries LLC, 943 F.3d 373, 378 (7th Cir. 2019); Seattle Times Co. v. National Surety Corp., 2016WL 3033498, at *3 (W.D. Wash. May 27, 2016); Cushman & Whitfield, Inc. v. Illinois National Ins. Co., 2015 WL 2259647, at*4 (N.D. Ill. May 11, 2015). These cases concern the interpretation of an existing contract to define the scope of each party's responsibility for future claims.  The relief sought in Count V does not turn on the interpretation of an existing contract.  Rather, a finding of nonliability on the merits turns on possible theories of liability that the Fund might raise in the future.  The request to evaluate all possible novel theories of liability that have yet to be alleged is too speculative to be a case or controversy. This kind of speculative analysis was not required in the cases that Union Pacific relies upon.  These cases do not apply.  Count V does not allege a case or controversy.

Availability of Declaratory Relief on Union Pacific's Claims

The Fund argues that declaratory relief is not available to Union Pacific under the Seventh Circuit's decision in Cunningham Brothers. Cunningham Brothers involved personal injuries to several workers on a construction site.  Cunningham Brothers was the general contractor, and

the workers were employed by a subcontractor Davidson Masonry and Restoration, Inc. (Davidson).  The workers were injured when a platform on which they stood collapsed.  One worker filed a personal injury action against Cunningham Brothers.  Cunningham Brothers then brought a declaratory judgment action against all of the injured workers and the subcontractor Davidson.  Cunningham Brothers sought a declaratory judgment that it was not liable to any of these workers and that the subcontractor Davidson was the proper party for the workers to sue. Cunningham Brothers also sought a declaration that Davidson was liable to indemnify and hold Cunningham Brothers harmless for any amount which might be recovered against Cunningham Brothers by any of the individual defendant workers. Cunningham Brothers, 407 F.2d at 1167.

The Seventh Circuit in Cunningham Brothers found that the general contractor could not use a declaratory judgment action to force the injured workers to litigate their personal injury claims in a single forum. Cunningham Brothers, 407 F.2d at 1167-68.  The Seventh Circuit found that the attempted declaratory judgment action against the workers would not effectuate the purpose of the statute, "[P]laintiff has failed to demonstrate how the allowance of the instant declaratory judgment action would 'effectuate the purpose of the statute and thereby afford relief from

uncertainty and insecurity with respect to rights, status and other legal relations.'" 407 F.2d at 1168 (quoting E. Edelman & Co. V. Triple-A Specialty Co., 88F.2d 852, 854 (7th Cir. 1937)).

The Cunningham Brothers decision involved the exercise of the court's discretion in deciding whether to grant declaratory relief in a particular circumstance. The case does not state a fixed rule. Bankers Trust Co., 959 F.2d at 680. The facts alleged here do not relate to the circumstances in Cunningham Brothers. Union Pacific is not seeking to cut off the rights of individual landowners. Landowners with partially subrogated Mine Subsidence Claims could still sue Union Pacific and would not be bound by any decision in this case. Landowners with Fully Paid Subrogated Claims would have been paid in full and have no basis to sue Union Pacific on a Mine Subsidence Claim. The case only affects two parties, Union Pacific and the Fund. The declaratory relief sought in Counts I through III would effectuate the purpose of the statute by relieving Union Pacific and the Fund from "uncertainty and insecurity with respect to rights, status and other legal relations" with respect to the preclusive effect of the judgments in Gillespie and the 2017 Case. The discretionary denial of declaratory relief in Cunningham Brothers does not apply here.

In this case, a resolution of the scope of the preclusive effect of the prior judgments in Gillespie and the 2017 Case would promote certainty for the parties about their relative rights and obligations.  See Medical Assur. Co. v. Hellman, 610 F.3d 371, 381 (7th Cir. 2010) ("The goal of the Declaratory Judgment Act is to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties.").  The Court recommends that Union Pacific be allowed to proceed with its request for declaratory relief in Counts I through III.

The Court will now address whether Counts I through IV state a claim.

Motion to Dismiss

To state a claim, Union Pacific must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2) & (d)(1).  Union Pacific must allege sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face if it provides the defendant fair

notice of what the claim is and the grounds upon which it rests.  George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).  Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."  Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC, 499 F.3d 663, 667 (7th Cir. 2007).

In ruling on a motion to dismiss for failure to state a claim, the Court may consider the Amended Complaint, any document alleged in the Amended Complaint and central to the plaintiff's claims, and matters of public record such as filings in Gillespie, the 2017 Case, and the Hill Case. 188 LLC v. Trinity Indus. Inc., 300 F. 3d 730, 735 (7th Cir. 2002); Henson v. CSC Credit Servs., 29 F. 3d 280, 284 (7th Cir. 1994).

Count I

Count I seeks a declaratory judgment that the Fund is precluded under the doctrine of issue preclusion (or collateral estoppel) from asserting the Precluded Issues against Union Pacific in Mine Subsidence Claim actions by virtue of the 2015 Opinion and judgment in Gillespie and the 2019 Opinion and the judgment in the 2017 Case.  The preclusive effect of the judgment in Gillespie is governed by Illinois law, and the preclusive effect of the judgment in the 2017 Case is governed by federal law.  E.g.,

Brokaw v. Weaver, 305 F.3d 660, 669 (7th Cir. 2002) (preclusive effect of state judgment determined by state law); E.E.O.C. v. Harris Chernin, Inc., 10 F.3d 1286, 1289 n.4 (7th Cir. 1993) (preclusive effect of federal judgment governed by federal law).

The elements of issue preclusion, or collateral estoppel, under federal law are: "(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action." Ambrosia Land Investments, LLC v. Heritage Coal Company, LLC, 2009 WL 10726255, at *3 (S.D. Ill. June 10, 2009). Under Illinois law, the elements are: "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." Ambrosia, 2009 WL 10726255, at *3.

The Precluded Issues were all actually litigated and decided in a final judgment. The Circuit Court in Gillespie entered summary judgment in favor of Union Pacific on the Assumption of Liability and Direct Participation Liability issues. That decision was affirmed by the Illinois Appellate Court

and the Fund did not seek leave to appeal that decision to the Illinois Supreme Court. The Fund and Union Pacific tried the Alter Ego Liability and De Facto Merger Liability issues in the 2017 Case before this Court. This Court found for Union Pacific and against the Fund on both issues. This Court entered judgment in favor of Union Pacific and against the Fund. The Fund appealed but dismissed the appeal. The decision in Gillespie and the 2017 Case, thus, are final judgments entered against the Fund on the Precluded Issues after the Precluded Issues were fully litigated on the merits.

The Fund is a party bound by these judgments for purposes of issue preclusion. Whether a party is bound by the doctrine of issue preclusion depends on whether the party in the new case had a full and fair opportunity to litigate the issues in the prior case. Taylor v. Sturgell, 553 U.S. 880, 892-93 (2008). The Supreme Court in Taylor listed six specific categories in which a person other than a party in the prior action would be barred by issue preclusion in a current case. Taylor, 553 U.S. at 893-96. One circumstance existed if the plaintiff in the current action controlled the litigation of the prior action. Taylor, 553 U.S. at 896 (citing Restatement (Second) of Judgments § 39). Illinois law agrees that a person who was not a party, but who directly participated in the prior litigation on the losing

side is barred by issue preclusion from filing a new case in his own name and relitigating the same issues in a new case.  Kramer v. Chicago Title & Trust Co., 69 Ill.App.3d 1015, 1018-19, 387 N.E.2d 1105, 1107-08 (Ill. App. 1st Dist. 1979).

Here, Union Pacific alleges that the Fund controlled the litigation and directly participated in Gillespie and the 2017 Case.  Union Pacific also alleges that the Fund controls the Tendered Mine Subsidence Claims.  The Hill Complaint shows that the Fund controls the litigation of that case.  The Hill Complaint alleges that the Fund paid the $45,184.15 in reinsurance of the damage to the Hills' home caused by subsidence of the Mines, and the Fund is the only party that seeks reimbursement from Union Pacific.  The Hill Complaint also states that Aurora and Anthony Hill are acting for the use and benefit of the Fund.

The Hill Complaint also alleges facts that establish that the Fund is the real party in interest in this Subrogated Claim.  The Fund is the only party seeking relief in the Hill Case.  The Fund seeks reimbursement of the $45,184.15 paid to the Hills on the Mine Subsidence Claim.  Aurora Hill, Anthony Hill, and Badger seek no relief and are only nominal parties under both Illinois and federal law.  See Scachitti v. UBS Financial Services, 215 ILL.2d 484, 506, 832 N.E.2d 544, 607 (Ill. 2005) (citing Lyons v. Ryan, 201

Ill.2d, 529, 534-35, 780 N.E.2d 1098, 1102 (Ill. 2002)) (The party seeking actual relief in the action is the real party in interest.); <u>United States v. Aetna Cas. & Sur. Co</u>., 338 U.S. 366, 380-81 (1949) (A subrogated insurer is the real party in interest.); <u>Armour Pharmaceutical Co. v. Home Ins. Co.</u>, 60 F.R.D. 592, 594 (N.D. Ill. 1973) (same); <u>see also</u> Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest.").

Union Pacific, therefore, states a claim that the Fund cannot relitigate the Precluded Issues in any other Mine Subsidence Claims in which the Fund is seeking reimbursement; the Precluded Issues have already been fully litigated and resolved in <u>Gillespie</u> and the 2017 Case; and the Fund was fully represented in those two cases.  Count I states a claim.

The Fund argues that it is not bound because it participated in Gillespie and the 2017 Case as subrogee of the insurer that was subrogated to the landowners that suffered the damage from the subsidence of the Mines.  As such, the Fund "stepped into the shoes of insurer" that "stepped into the shoes" of each landowner.  <u>See</u> <u>Perry v. Globe Auto Recycling, Inc.</u>, 227 F.3d 950, 953 (7th Cir.  2000).  The Fund argues that it is not in privity with the <u>Gillespie</u> and 2017 Case when it is

subrogated to other parties in other cases, and so, is not bound by the decisions in those cases.

The question whether the Fund is bound for purposes of issue preclusion is not as formalistic as the Fund contends.  The Fund is bound if it had a full and fair opportunity to litigate the Precluded Issues in <u>Gillespie</u> and the 2017 Case.  <u>Taylor</u>, 553 U.S. at 896 (citing <u>Restatement (Second) of Judgments</u> § 39).  Union Pacific alleges that the Fund had such a full and fair opportunity to litigate the Precluded issues.  If so, the Fund will be bound by the preclusive effect of those judgments for purposes of issue preclusion.

The Fund relies on the <u>Ambrosia</u> decision to support its argument that a subrogee in one claim is not barred by issue preclusion from raising the same issues in other cases as the subrogee of other injured parties. The Court has reviewed the <u>Ambrosia</u> decision and respectfully disagrees with its holding on issue preclusion.  The <u>Ambrosia</u> court stated that "it would make little sense to preclude the Fund from recovery money it is obligated by law to reimburse for mine subsidence . . . because of the prior judgment of one district court or circuit court case."  <u>Ambrosia</u>, 2009 WL 10726255, at *4.  The Supreme Court in <u>Taylor</u>, however, stated a party that controlled a prior litigation is barred from relitigating an issue that was

fully litigated to judgment in one federal district court or one state court,
"Because such a person has had 'the opportunity to present proofs and
argument,' he has already 'had his day in court' even though he was not a
formal party to the litigation.'"  Taylor, 553 U.S. at 895 (quoting
Restatement (Second) of Judgments § 39 Comment *a*.).  Union Pacific
alleges that the Fund has had a full and fair opportunity to litigate the
Precluded Issues in Gillespie and the 2017 Case and lost, and the
judgments in those two cases became final.  Union Pacific, therefore, has
sufficiently alleged that the Fund is barred from relitigating the Precluded
Issues in any other actions on Mine Subsidence Claims under the
principles of issue preclusion.   Taylor, 553 U.S. at 895; Kramer, 387
N.E.2d at 1107-08.

The Fund argues that it could not be in privity with the landowners in
Gillespie, the 2017 Case, or any other Subrogated Claim because the Fund
was or is the subrogee of the primary insurer in each case, not the
landowner.  The Court again disagrees.  Again, the concept of privity in the
doctrine of issue preclusion does not depend on such formalities, but
rather, depends on whether the party in the current case had a full and fair
opportunity to litigate the issues in the prior case.  Taylor, 553 U.S. at 892-
93.; Kramer, 387 N.E.2d at 1118-19.  As explained above, Union Pacific

alleges that the Fund controlled and directly participated in the litigation in Gillespie and the 2017 Case. If so, the Fund cannot relitigate the Precluded Issues in any subsequent action on any Mine Subsidence Claims because those issues have already been fully litigated and resolved.

The Fund also relies on the Seventh Circuit's decision in Perry.  The Perry decision held that an assignee of a claim is not barred by claim preclusion or res judicata from pursuing the assigned claim even though the assignee had litigated his own claim for the same type of injury and lost already.  Perry, 227 F.3d at 953-54.  The Perry case only addressed claim preclusion.  The Perry decision did not address issue preclusion, and so, is not applicable to Count I.  Count I states a claim.

### Count II

Union Pacific seeks in Count II a declaratory judgment that the Fund is barred by claim preclusion, or res judicata, from bringing any more Mine Subsidence Claim actions against Union Pacific. To allege claim preclusion under either federal or Illinois law, Union Pacific must allege an identity of the parties in a prior case, an identity of the causes of action, and a final judgment on the merits.  Ambrosia, 2009 WL 10726255, at *3.

The Court finds that Union Pacific fails to state a claim in Count II because it fails to allege that other Mine Subsidence Claims are the same

cause of action as the causes of action in Gillespie or the 2017 Case.  A

cause of action for purposes of claim preclusion, or res judicata, consists of

all possible rights for relief for a party that arise out the same transaction or

set of operative facts.  Kilburn-Winnie v. Town of Fortville, 891 F.3d 330,

333 (7th Cir. 2018) (applying federal law); Chicago Title Land Trust Co. v.

Potash Corp. of Saskatchewan Sales Ltd., 664 F.3d 1075, 1079-80 (7th Cir.

2011) (applying Illinois law).  The Gillespie case arose from damage to a

school in 2009 that resulted in a multimillion-dollar reinsurance payment.

The 2017 Case arose from damage to the homes owned by the Bartolinos

and the Bessermans that resulted in $235,000 in reinsurance payments.

The Hill case concerns damage to the home owned by the Hills that

resulted in $45,184.15 in reinsurance payments.  Other Mine Subsidence

Claims arise from different sets of operative facts involving different

damages to different properties with different owners at different times in

different places.  As a result, claim preclusion, or res judicata, does not

apply.  See Perry, 227 F.3d at 953; see Restatement (Second) of

Judgments, § 39 Comment *b* ("The rule [that a nonparty that controls a

prior litigation is bound by issue preclusion] applies to issue preclusion, and

not to claim preclusion, because the person controlling the litigation, as a

non-party, is by definition asserting or defending a claim other than one he

himself may have."). Union Pacific's arguments to the contrary are not persuasive. Union Pacific fails to state a claim in Count II.

Count III

Union Pacific seeks a declaratory judgment that the Fund is the real party in interest in the Fully Paid Mine Subsidence Claims. Union Pacific also seeks a declaration that the Fund is in privity for issue preclusion and claims preclusion purposes with all landowners and primary insurers of Fully Paid Mine Subsidence Claims. Union Pacific alleges that the Fund is the real party in interest in the Fully Paid Mine Subsidence Claims because the Fund is the only party entitled to payment. The landowner and the primary insurer have been paid in full. Union Pacific is correct. The Fund is the real party in interest as it paid the Landowner and primary insurer in full, and so, is the only party entitled to payment of a Mine Subsidence Claim. See Scachitti, 831 N.E.2d at 607 (The party seeking actual relief in the action is the real party in interest.); United States v. Aetna Cas. & Sur. Co., 338 US at 380-81 (a subrogated insurer is the real party in interest."). Union Pacific alleges a claim for declaratory relief in that the Fund is the real party in interest in Fully Paid Mine Subsidence Claims and is bound by issue preclusion as alleged in Count I, but not claim preclusion as alleged in Count II. Count III states a claim.

Page **31** of **37**

<u>Count IV</u>

Union Pacific asks the Court to enjoin the Fund from directly or indirectly bringing any more Mine Subsidence Claim actions against Union Pacific.  To state a claim for a permanent injunction, Union Pacific must allege success on the merits and no adequate remedy at law.  <u>Carr v. Tillery</u>, 2010 WL 1963398, at *10 (S.D. Ill. May 17, 2010).  A party seeking temporary or preliminary injunctive relief must allege irreparable harm, but a party seeking a permanent injunction does not need to allege this additional element.  For purposes of a permanent injunction, the lack of an adequate remedy at law demonstrates irreparable harm:

> [T]he Seventh Circuit Court of Appeals has held also that a party seeking to justify entry of a permanent injunction is "not required ... to show irreparable injury .... Although it is a necessary element for a temporary restraining order or a preliminary injunction, 'irreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of the legal remedy.' " <u>Crane v. Indiana High Sch. Athletic Ass'n</u>, 975 F.2d 1315, 1326 (7th Cir.1992) (quoting <u>Jennings Water, Inc. v. City of N. Vernon, Ind.</u>, 895 F.2d 311, 318 n. 6 (7th Cir.1989)). Therefore, a showing of irreparable harm in the absence of injunctive relief should be viewed as a method for a party seeking a permanent injunction to demonstrate the lack of an adequate legal remedy. This understanding comports with the notion that it is critical for a party seeking an injunction to protect the preclusive effect of a federal judgment to "satisfy the general equitable requirement that the 'legal' remedy by defensive assertion of res judicata be found inadequate." <u>18 Wright, Miller & Cooper, Federal Practice & Procedure</u> § 4405 (collecting cases)**.**

Carr, 2010 WL 1963398, at *10.

The Seventh Circuit has stated that if a party repeatedly brings lawsuits not barred by claim preclusion (res judicata) against the same defendant in an attempt to relitigate issues that have already been decided in prior cases, the defendant may, in appropriate cases, be entitled to an injunction to stop the suing party from bringing such suits.  See Perry, 227 F.3d at 954 (the district court "can always craft an injunction" to stop the filing of new cases to relitigate matters that have already been resolved). Union Pacific alleges that the Fund plans to sue Union Pacific on the Mine Subsidence Claims over and over again to relitigate the Precluded Issues. The Fund has already done so in the Hill case and Union Pacific alleges that the Fund is likely to continue doing so.  Union Pacific alleges that the 58 Tendered Mine Subsidence Claims to Union Pacific and the multimillion-dollar settlement demand show this intent.  These allegations are sufficient to state a claim that Union Pacific may have no adequate remedy at law to stop the Fund from continually bringing actions in an attempt to relitigate the Precluded Issues.

Union Pacific seeks an injunction that would enjoin the Fund from filing actions in both state and federal court.  This Court may issue injunctions that affect actions in other federal courts.  See Carr v. Tillery,

591 F.3d 909, 920-21 (7th Cir. 2010).  The Anti-injunction Act, however,

prohibits this Court from enjoining actions in state court except for certain

limited situations.  28 U.S.C. § 2283.[1]

One such exception to the general rule in the Anti-Injunction Act

allows this Court to enjoin state court actions to bar relitigating matters that

have already been decided in federal court (relitigation exception).  28

U.S.C. § 2283; Chick Kam Choo, 486 U.S. 150.  The relitigation exception

would apply here if Union Pacific prevails in Counts I and III of this case.  If

Union Pacific prevails on these Counts, this Court will enter a judgment that

the Fund is the real party in interest in any Fully Paid Mine Subsidence

Claim brought against Union Pacific, and the Fund is precluded from

raising the Precluded Issues.  If Union Pacific can establish the other

elements needed for injunctive relief, this Court may enjoin the Fund from

bringing actions in state court and an improper attempt to relitigate the

Precluded Issues.  See Perry, 227 F.3d at 954.

The Fund argues that the Anti-Injunction Act would not allow an

injunction barring it from raising the Assumptions of Liabilities issue or the

Direct Participation issue in subsequent cases because the Illinois state

---

[1] The prohibition of the Anti-Injunction Act extends to cover an injunction that barred the Fund from raising the Precluded Issues in a state court action.  Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 145-50 (1988).

courts decided those issues in Gillespie, and the relitigation exception only applies to stop the relitigation of a judgment in federal court, not state court. The Court disagrees.  The injunction sought would bar relitigation of issues resolved in this case and the judgment in this case. If Union Pacific prevails in Counts I and III, then the judgment in this case would hold that: (1) the decision in Gillespie under Illinois issue preclusion law bars the Fund from relitigating the Assumption of Liabilities and Direct Participation Liability issues; and (2) the Fund is the real party in interest under Illinois law and federal law in any Fully Paid Subrogation Claim that it may directly or indirectly bring against Union Pacific.  The Anti-Injunction Act would allow such an injunction to protect and effectuate such a judgment in Counts I and III of this case, should Union Pacific prevail on those Counts.  28 U.S.C. § 2283; see Chick Kam Choo, 486 U.S. at 150 (The district court could enjoin the parties from relitigating state-law issues that the district court had already decided).  Union Pacific states a claim in Count IV for a permanent injunction to bar the Fund from bringing actions on the Subrogated Claims.

### Motion to Strike

The Fund moves to strike ¶¶ 20-23 from the Amended Complaint allegations because these paragraphs contain allegations of inadmissible

confidential global settlement discussions between Union Pacific and the Fund to try and settle all outstanding Mine Subsidence Claims.

Federal Rule of Evidence 408(a) prohibits using evidence of confidential settlement negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction."  Rule 408 (b), however, allows admission of evidence of confidential settlement for another purpose. In this case Union Pacific alleges information about the confidential global settlement negotiations to show that an actual controversy exists which is a necessary element to secure declaratory relief.  28 U.S.C. § 2201.  These paragraphs allege that the Fund stated that its exposure for reinsurance of Mine Subsidence Claims was between $46 million to $234 million, and that the Fund made a settlement demand for $69,631,344 to settle all current and future Mine Subsidence Claims.  Union Pacific made these allegations as part of the allegations to show an imminent risk of harm from a concrete dispute between the parties that would constitute an actual controversy. Union Pacific did not allege information about the settlement negotiations to prove or disprove the validity of any claim or the value of any claim, nor did Union Pacific allege information about the settlement negotiations to show

any prior inconsistent statement or contradiction. The Court therefore should not strike paragraphs 20-23 from the Amended Complaint.

THEREFORE, THIS COURT RECOMMENDS that Defendant Illinois Mine Subsidence Insurance Fund's Motion to Dismiss and Strike (d/e 22) should be ALLOWED in part and DENIED in part.  This Court recommends that Counts II and V of the Amended Complaint should be dismissed.  The Motion should otherwise be denied.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER: September 29, 2021

_____ s/ *Tom Schanzle-Haskins* _____
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE