# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-cv-3281** |
| | ) | |
| **ILLINOIS MINE SUBSIDENCE INSURANCE FUND,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court is Plaintiff Union Pacific Railroad Company's ("Union Pacific") Motion for Summary Judgment (d/e 65) and Defendant Illinois Mine Subsidence Insurance Fund's ("the Fund") Motion for Summary Judgment (d/e 75). For the reasons set forth, Union Pacific's Motion for Summary Judgment (d/e 65) is GRANTED in PART and DENIED in PART and the Fund's Motion for Summary Judgment (d/e 75) is GRANTED in PART and DENIED in PART.

## I.     INTRODUCTION

On October 20, 2020, Union Pacific filed its original Complaint for declaratory and injunctive relief in this Court (d/e 1). On August 25, 2022, Union Pacific filed its Second Amended Complaint containing three counts (d/e 42). Only Count I and the corresponding part of Count III of the Second Amended Complaint remain at issue before this Court. See d/e 47.

In Count I, Union Pacific seeks several declarations. See d/e 42, ¶¶ 30, 31, 33. Union Pacific first requests a declaration, "consistent with" this Court's March 31, 2022 Order, stating that issue preclusion bars the Fund's claims acquired before the entry of judgment in a 2015 case and a 2017 case against Union Pacific. Id. at ¶ 30. Union Pacific also requests a declaration defining when a claim is "acquired," and a declaration stating that the Fund "is the real party in interest" and "in privity" once reimbursements are made. Id. at ¶¶ 31, 33.

Union Pacific then alleges in Count I that claim preclusion bars the Fund "and its privies...from relitigating any theory it raised or could have raised in the 2017 Case." Id. at ¶ 36. Union Pacific

alleges that "[t]here is an identity of parties and a final judgment on the merits," and that "the facts out of which any liability could arise are necessarily the facts" underlying the 2017 case, such that the Fund "could have asserted all claims it had acquired without changing what was litigated and decided" when litigating the 2017 Case. <u>Id.</u> at ¶¶ 36-37.

In Count III, Union Pacific requests an injunction in support of any declarations made in Count I, as well as the injunction that the Court in its March 31, 2022 Order held that Union Pacific may be entitled to seek in the 2017 Case. <u>Id.</u> at ¶¶ 50–54; <u>see also</u> d/e 38, p. 21.

On March 26, 2024, this Court dismissed Count II and the corresponding part of Count III of the Second Amended Complaint. <u>See</u> d/e 47. Union Pacific filed an interlocutory appeal of this Court's dismissal of Count II and the corresponding part of Count III, which the Seventh Circuit Court of Appeals dismissed on June 6, 2025 for lack of appellate jurisdiction. <u>See</u> d/e 52, d/e 73.

On November 4, 2024, Union Pacific filed a Motion for Summary Judgment (d/e 65) and Memorandum in Support (d/e

66). On November 25, 2024, the Fund filed a Memorandum in Opposition (d/e 68), to which Union Pacific filed a Reply on December 9, 2024 (d/e 69).

On July 14, 2025, the Fund filed a Motion for Summary Judgment and Memorandum in Support (d/e 75). On August 4, 2025, Union Pacific filed a Memorandum in Opposition (d/e 76), to which the Fund filed a Reply on August 28, 2025 (d/e 77).

## II.   LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the non-moving party. Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).

When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008). "At summary judgment, 'a court may not make credibility

determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder.'" Paz v. Wauconda Healthcare & Rehab. Ctr., LLC, 464 F.3d 659, 664 (7th Cir. 2006).

The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Modrowski v. Pigatto, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (internal citation omitted)). After the moving party does so, the non-moving party must then go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quotation and footnotes omitted).

### III.   FACTS

The Court draws the following facts from the parties' statements of undisputed material facts. The Court discusses any

material factual disputes in its analysis. Immaterial facts or factual disputes are omitted. Any fact submitted by any party that was not supported by a citation to evidence will not be considered by the Court. <u>See</u> Local Rule 7.1(D)(2)(b)(2). In addition, if any response failed to support each allegedly disputed fact with evidentiary documentation, that fact is deemed admitted. <u>Id.</u>

The Illinois Legislature created the Fund to provide insurance companies reinsurance for certain mine subsidence damage claims. <u>See</u> d/e 66, ¶ 1; d/e 68, p. 10; d/e 75, ¶ 1; d/e 76, p. 8; <u>see also</u> Illinois Mine Subsidence Act ("the Act"), 215 ILCS 5/803.1 <u>et seq</u>. The Act requires Illinois property insurers to provide mine subsidence coverage and the Fund to fully reinsure the coverage subject to a statutory coverage cap and other conditions specified in the Act. <u>See</u> d/e 66, ¶ 2; d/e 68, p. 10; d/e 75, ¶ 2; d/e 76, p. 8; <u>see also</u> 215 ILCS 5/805.1, 5/810.1. The Fund sets and receives the premiums less a ceding premium to the property insurer, which must secure subrogation rights so the Fund can assert them. <u>See</u> d/e 66, ¶ 3; d/e 68, p. 8; d/e 75, ¶ 3; d/e 76, p. 8; <u>see also</u> 215 ILCS 5/811.1, 5/815.1.

From 1904 to 1953, the Superior Coal Company ("Superior") operated four coal mines in Macoupin County, Illinois. See d/e 66, ¶ 4; d/e 68, pp. 8; d/e 75, ¶ 4; d/e 76, p. 8. In 1957, Superior was dissolved, and pursuant to the relevant governing statute at the time, actions could be brought against Superior for only two years after its dissolution. See d/e 66, ¶¶ 4-6; d/e 68, p. 8; d/e 75, ¶ 4; d/e 76, p. 8.

In 1995, Superior's parent company, the Chicago and North Western Railway Company, merged into Union Pacific. See d/e 75, ¶ 4; d/e 76, p. 8. From approximately 1996 to 2008, Union Pacific settled about 21 subsidence claims with the Fund arising from Superior's operations. Id.

In 2009, the Fund, as subrogee, submitted a multi-million-dollar claim to Union Pacific after a Gillespie, Illinois school suffered mine subsidence damage. See d/e 75, ¶ 5; d/e 76, pp. 8-9. After Union Pacific declined to pay the claim, the Fund, as subrogee, and the Gillespie School District sued Union Pacific in Macoupin County Circuit Court in Gillespie Community Unit School District No. 7 v. Union Pacific Railroad ("Gillespie"). Id.

In 2015, the Illinois Fourth District Appellate Court in Gillespie decided several issues in favor of Union Pacific but ultimately remanded the case for trial on the liability theory of Union Pacific's status as an "alter ego" of Superior. See d/e 75, ¶ 6; d/e 76, p. 9; see also Gillespie Community Unit School District No. 7 v. Union Pacific Railroad, 2015 IL App (4th) 140877 ("the 2015 Opinion in Gillespie"). After remand, the parties settled Gillespie. Id.

In 2017, the Fund—as subrogee of homeowners, the Bessermans and the Bertolinos—sued Union Pacific for mine subsidence occurring on two properties located in Macoupin County. See d/e 75, ¶ 7; d/e 76, p. 9; see also Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co., No. 17-CV-3199 ("the 2017 Case"). No witnesses to the relevant events were still alive or had been deposed, and the trial consisted in large part of expert witnesses who reviewed the historical documents. See d/e 66, ¶ 16; d/e 68, p. 28.

In 2019, U.S. Magistrate Judge Tom Schanzle-Haskins, by consent, ruled in the 2017 Case in favor of Union Pacific. See d/e 75, ¶ 7; d/e 76, p. 9; see also Illinois Mine Subsidence Ins. Fund v.

<u>Union Pac. R.R. Co.</u>, No. 17-CV-3199, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019) ("the 2019 Opinion"). Among the issues Judge Schanzle-Haskins decided against the Fund, as subrogee of the Bessermans and Bertolinos, were the "alter ego" and "de facto merger" theories of recovery. <u>Id.</u> The Fund—as subrogee of the Bessermans and Bertolinos—filed, but later voluntarily dismissed, an appeal of the 2019 Opinion. <u>Id.</u>

In 2020, the Fund—as subrogee of homeowners, the Hills— and the Hills sued Union Pacific for a 2015 mine subsidence event in Macoupin County Circuit Court in <u>Hill v. Union Pacific Railroad</u>, No. 2020LM63 ("<u>Hill</u>"). <u>See</u> d/e 75, ¶ 8; d/e 76, pp. 8-9. The underlying mine subsidence event occurred in 2015, and the Fund paid a $45,184.15 reinsurance reimbursement to the Hills' homeowners' insurer in November 2018. <u>Id.</u>

<u>Hill</u> is still pending in Macoupin County Circuit Court and is the only subsidence claim acquired by the Fund, as subrogee, prior to the 2019 Opinion on which the applicable statute of limitations has not run. <u>Id.</u> The <u>Hill</u> Complaint also includes a theory of recovery concerning Union Pacific's status as the "alter ego" of the

Chicago and North Western Railway Company, Superior's parent company that merged into Union Pacific in 1995. Id., see also d/e 75, ¶ 4; d/e 76, p. 8.

## IV. ANALYSIS

"[A] federal court sitting in diversity applies the substantive law of the state in which it is sitting[.]" Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 392 (7th Cir. 2011); see also Nat'l Am. Ins. Co. v. Artisan & Truckers Case. Co., 796 F.3d 717, 723 (7th Cir. 2015). Because the Court has diversity jurisdiction over this action and is sitting in Illinois, and because neither party has provided any indication that it believes a different state's law should apply, Illinois substantive law and federal procedural law apply. See Hahn v. Walsh, 762 F.3d 617, 629 (7th Cir. 2014); see also RLI Ins. Co. v. Conseco, Inc., 543 F.3d 384, 390 (7th Cir. 2008).

In Count I, Union Pacific seeks declarations: (1) that claims the Fund acquired before the entry of prior judgments are barred by issue preclusion, consistent with the Court's March 31, 2022 Order, (2) determining when a claim is "acquired," and (3) that the Fund "is the real party in interest" and "is in privity" once reimbursements

are made. d/e 42, ¶¶ 30, 31, 33. Union Pacific then alleges in Count I that claim preclusion bars the Fund "and its privies…from relitigating any theory it raised or could have raised in the 2017 Case." <u>Id.</u> at ¶ 36. Union Pacific also alleges in Count I that "[t]here is an identity of parties and a final judgment on the merits," and that "the facts out of which any liability could arise are necessarily the facts" underlying the 2017 Case, such that the Fund "could have asserted all claims it had acquired without changing what was litigated and decided" when litigating the 2017 Case. <u>Id.</u> at ¶¶ 36-37.

Union Pacific seeks, in its Motion for Summary Judgment, "a judgment that [the Fund] is barred by claim preclusion, which would dispose of all remaining issues, from litigating all claims [the Fund] had against Union Pacific before the 2019 judgment." d/e 66, p. 8. Union Pacific also argues "two issues the Court is unlikely to reach, issue preclusion and non-party preclusion," as "alternative grounds for the present motion." <u>Id.</u>

When a claim is "acquired" potentially implicates not only whether the Fund's contested claim is barred by issue preclusion,

but also whether the Fund's contested claim is barred by claim preclusion, which Union Pacific argues can resolve all remaining issues. Therefore, the Court begins its analysis by determining when a claim is "acquired" and, then, whether the Fund's contested claim is barred by claim preclusion.

### A. A Claim is "Acquired" When the Fund Receives Adequate Documentation Under the Act That the Insurer Has Properly Paid the Claim and is Entitled to Reimbursement by the Fund.

Union Pacific argues in its Second Amended Complaint that a claim is "acquired" "as soon as the claim arises if a policy is in place on that date even if the claim has not been finally paid to the property owner" because "from that time, only [the Fund] can recover damages to the extent the damages are insured by" the Fund. d/e 42, ¶ 32. Union Pacific argues at the summary judgment stage that the Fund acquires claims "when they are tendered to" the Fund. d/e 76, p. 7.

The Fund argues in its Motion for Summary Judgment that this Court's March 31, 2022 Order "makes clear" that "the time of payment…is the point at which [the Fund] 'acquires' the claim." d/e

75, p. 9. The Fund cites a portion of this Court's March 31, 2022

Order:

> The law is clear, and the parties agree, that [the Fund] is the real party in interest with respect to all fully paid mine subsidence claims. It is equally clear that [the Fund] is in privity with "homeowners whose insurers were reinsured by [the Fund] and all insurers who are reinsured by [the Fund]" once reinsurance payments are made. However, as discussed [earlier in the order], neither [the Fund]'s real party in interest status nor [the Fund]'s privity relationship with its subrogors mean that [the Fund] can be precluded from relitigating an issue in a given mine subsidence claim if [the Fund] acquired the claim after the issuance of the relevant prior judgment.

Id. (quoting d/e 38, pp. 22-23) (emphasis added in Motion).

Union Pacific responds that the Fund "assumes control of an

insured subsidence claim…generally [] when the claim is tendered."

d/e 76, p. 26. Union Pacific argues that the portion of this Court's

March 31, 2022 Order referenced by the Fund, "[w]hile true, [] does

not hold [that the Fund] is not bound by issue preclusion before

payment," as the Fund "controls claims upon tender," "alone

determines when to pay them," and "represents its own interest in

such claims once they are tendered." Id. at 27. The Court notes that

pursuant to the "Claim Payments" provision of the Act, the Fund

"shall reimburse insurers for all amounts due within 90 days" of

receiving proper documentation from the insurer. 215 ILCS 5/812.1.

The Fund also argues that its proposed definition for when a claim is "acquired" aligns with Illinois case law governing subrogation rights, which "requires that the subrogee, i.e., the person subrogating to the rights of another, first pay the obligation owed the insured before stepping into the insured's shoes to enforce the claim against the wrongdoer." d/e 75, p. 9 (emphasis in original). The Fund cites to Zurich v. American Insurance Co. v. Infrastructure Engineering, Inc., 2024 IL 130242, ¶ 45, in which the Illinois Supreme Court found it a "basic requirement[] of subrogation...that an insurer must pay its insured before it may maintain that suit, in its insured's shoes, against an alleged wrongdoer." Id., see also d/e 75, p. 9. The Fund also cites to Trogub v. Robinson, 366 Ill. App. 3d 838, 842, 853 N.E.2d 59, 63 (2006), in which the Illinois First District Appellate Court noted that, "[h]aving paid the defendant's creditor, the [party] stands in the creditor's shoes...and 'is entitled to exercise all the remedies which the creditor possessed' against the defendant." Id. (quoting D. DOBBS,

LAW OF REMEDIES § 4.3(4), at 604 (2d ed.1993) (quoting American
Surety Co. of New York v. Bethlehem National Bank of Bethlehem,
314 U.S. 314, 317 (1941))); see also d/e 75, p. 9.

The Court notes that "subrogation simply means substitution
of one person for another regarding a legal claim or right," and
agrees that it is a "basic requirement[] of subrogation" that "an
insurer must pay its insured before it may maintain that suit, in its
insured's shoes, against an alleged wrongdoer." Zurich, 2024 IL
130242, ¶¶ 32, 45 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)).
But the Act binds the Fund to all mine subsidence claims, even
before subrogation, by statutorily requiring the Fund to fully
reinsure the mine subsidence coverage subject to a statutory
coverage cap and other conditions specified in the Act. See d/e 66,
¶ 2; d/e 68, p. 10; d/e 75, ¶ 2; d/e 76, p. 8.

Regardless of whether a claim has actually been paid and
exchanged for subrogation rights, the Fund's statutory obligation to
pay mine subsidence claims (subject to statutory caps and other
conditions, see 215 ILCS 5/805.1, 5/810.1) ensures that any
subsequent subrogation will entail the "substitution of [the Fund]

for another regarding a legal claim or right." Zurich, 2024 IL

130242, ¶ 32 (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)). In

other words, the Act's directive that the Fund must pay the mine

subsidence claims (subject to statutory caps and other conditions,

see 215 ILCS 5/805.1, 5/810.1) operates completely independently

of any subrogation rights that such payment creates.

Pursuant to the "Claim Payments" provision of the Act, the

Fund:

> shall reimburse insurers for all amounts due within 90
> days after receiving adequate documentation, as set forth
> in the reinsurance agreement, the Plan of Operation or in
> the operating rules and procedures adopted by the Fund,
> that the insurer has properly paid the claim and is entitled
> to reimbursement by the Fund, subject to the limitations
> imposed by [another section of the Act].

215 ILCS 5/812.1. Therefore, the Court finds that, with regard to

its March 31, 2022 Order, the Fund "acquires" a claim upon

receiving adequate documentation under the Act that the insurer

has properly paid the claim and is entitled to reimbursement by the

Fund. The Court notes that this definition of when a claim is

acquired only applies to claims properly before this Court pursuant

to its March 31, 2022 Order—that is, claims acquired by the Fund before prior entry of judgment. See d/e 38.

Here, the parties agree that Hill is the only subsidence claim acquired by the Fund, as subrogee, prior to the 2019 Opinion on which the applicable statute of limitations has not run. See d/e 75, ¶ 8; d/e 76, pp. 8-9. The underlying mine subsidence event in Hill occurred in 2015, and the Fund paid a $45,184.15 reinsurance reimbursement to the Hills' homeowners' insurer in November 2018. Id.

As such, the Fund acquired the Hill subsidence claim upon receiving adequate documentation under the Act that the Hills' homeowners' insurer had properly paid the claim and was entitled to reimbursement by the Fund—necessarily prior to the Fund paying the $45,184.15 reinsurance reimbursement to the Hills' homeowners' insurer in November 2018. The Fund thus acquired the Hill subsidence claim prior to Judge Schanzle-Haskins' 2019 Opinion in the 2017 Case in favor of Union Pacific. See Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co., No. 17-CV-3199, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019).

Therefore, Union Pacific's Motion for Summary Judgment (d/e 65) and the Fund's Motion for Summary Judgment (d/e 75) are both GRANTED in part and DENIED in part as to Count I of the Second Amended Complaint seeking a declaration on when a claim is "acquired."

## B. Claim Preclusion Bars the Fund's Claims Against Union Pacific Acquired Before the Entry of Judgment in Prior Cases.

As to claim preclusion, Union Pacific alleges in Count I that "the facts out of which any liability could arise [here] are necessarily the facts about what happened before 1958 regarding Superior" and "[t]hose were the only facts on which evidence was offered, findings submitted, or an opinion issued in the 2017 Case." d/e 42, ¶ 37. Union Pacific alleges that "[t]he specifics of any given subsidence were irrelevant beyond determining the amount to be paid" and that, at "the time the 2017 Case was litigated, [the Fund] could have asserted all claims it had acquired without changing what was litigated and decided." Id.

This Court notes the Fund's assertion that Union Pacific's Motion for Summary Judgment claim preclusion argument "sets forth verbatim" sections of Union Pacific's Seventh Circuit appellate

brief materials. d/e 68, pp. 30-31. The Seventh Circuit dismissed that appeal on June 6, 2025 because this Court's order refusing an injunction was not "sufficiently definitive" to create appellate jurisdiction, noting that "substantial and similar" injunctive relief remained pending in this Court. See Union Pac. R.R. Co. v. Illinois Mine Subsidence Ins. Fund, 138 F.4th 1045, 1058 (7th Cir. 2025); see also d/e 52, d/e 73. Therefore, the Fund's contention is now inapposite.

To allege claim preclusion under federal or Illinois law, three criteria must be met: "(1) identity of parties, (2) identity of claims, and (3) a prior final judgment on the merits." Daza v. State, 2 F.4th 681, 683 (7th Cir. 2021); see also Hudson v. City of Chicago, 889 N.E.2d 210, 213 (Ill. 2008).

## 1. The Fund Has Been the Same Party in the Relevant Litigation Against Union Pacific.

As to identity of parties, Union Pacific asserts that the Fund's "nominal identity...has been identical in all litigation against Union Pacific, including Gillespie and the 2017 Case." d/e 66, p. 21. Even if the Fund as it appeared in Gillespie and the 2017 Case were a different legal entity than the Fund as it appeared in other cases

"because the claims came from different assignors," Union Pacific argues, both iterations of the Fund "would have identical interests and are therefore in privity with one another for claim preclusion purposes." Id. at pp. 21-22.

The Fund, in turn, notes that this Court has already determined that the Fund "cannot be precluded from litigating a particular matter with Union Pacific if [the Fund] did not acquire the cause of action until after a judgment was entered in another case." d/e 75, pp. 11-12 (citing d/e 38, pp. 19-20) (stating that the principle that an assignee assumes the same rights, title, and interest possessed by the assignor—and therefore inherits the assignor's immunity to the preclusive effect of a judgment in a case to which the assignor was not a party—"applies with as much force in the issue preclusion context as in the claim preclusion context.")).

As this Court found earlier, the Fund acquired the Hill subsidence claim upon receiving adequate documentation under the Act that the Hills' homeowners' insurer had properly paid the claim and was entitled to reimbursement by the Fund—necessarily

before Judge Schanzle-Haskins' 2019 Opinion in the 2017 Case in
favor of Union Pacific. That the Fund "cannot be precluded from
litigating a particular matter with Union Pacific if [the Fund] did not
acquire the cause of action until <u>after</u> a judgment was entered in
another case" does not control whether the Fund can be precluded
from litigating a particular matter with Union Pacific if the Fund
acquired the cause of action <u>before</u> a judgment was entered. d/e 75,
pp. 11-12 (emphasis added).

The parties agree that it was the Fund that sued Union Pacific
in <u>Gillespie</u>, the 2017 Case, and <u>Hill</u>. <u>See</u> d/e 75, ¶¶ 5, 7, 8; d/e 76,
pp. 8-9. Therefore, the Court finds that, in the Fund's litigation
against Union Pacific on claims the Fund acquired before the entry
of judgment in prior cases, the Fund has maintained a continuous
"identity of part[y]" for purposes of claim preclusion. <u>Daza</u>, 2 F.4th
at 683; <u>see</u> <u>also</u> <u>Hudson</u>, 889 N.E.2d at 213.

## 2. The Fund Brought or Could Have Brought the Same Claims in Prior Litigation Against Union Pacific.

As to identity of claims, Union Pacific asserts that because the
Fund "could have joined <u>Hill</u> and other similar claims to the 2019
Case and also could have sought a declaration establishing Union

Pacific's liability in all similar cases, the same cause of action requirement is satisfied" and the Fund under Illinois law "should be precluded from [bringing] claims it had at the time of the 2019 Opinion." d/e 66, p. 23.

The Fund argues that because claim identity must be assessed at the outset of a lawsuit, the Fund could not have raised the Hill claim as part of the 2017 Case because the 2017 Case had a "February 2018 deadline for amending pleadings and adding parties" and the Fund "did not acquire the claim, i.e., pay reinsurance reimbursement to the Hills' homeowners' insurer, until November of 2018." d/e 75, pp. 13-14.

Illinois law determines identity of claims using the "transactional test," under which separate claims constitute the same cause of action for claim-preclusion purposes "'if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.'" Walczak v. Chicago Bd. of Educ., 739 F.3d 1013, 1016–17 (7th Cir. 2014) (quoting Cooney v. Rossiter, 2012 IL 113227, ¶ 21 (quoting River Park, Inc. v. City of Highland Park, 703 N.E.2d 883, 893 (1998))). Claim preclusion

applies to matters that were and "that could have been" decided in
the original action. Id.

As discussed earlier in determining when a claim is
"acquired," the facts of a particular homeowner's mine subsidence
claim—whether the claim actually involved mine subsidence, the
proffered documentation of the claim, the damage amount relative
to the statutory cap, and so forth—determine whether and how the
Fund must pay an insurer's claim under the Act. See 215 ILCS
5/812.1. However, the facts of the mine subsidence underlying
each of the Fund's claims against Union Pacific have not
constituted the substance of any of the Fund's claims or the
opinions deciding them.

In the 2015 Opinion in Gillespie, approximately three-quarters
of the factual background involved the history of and relationship
between Superior and Chicago and North Western Railway
Company. See Gillespie Community Unit School District No. 7 v.
Union Pacific Railroad, 2015 IL App (4th) 140877, ¶¶ 11-53, 54-66.
The Illinois Fourth District Appellate Court found that "Chicago and
North Western never assumed liability for future subsidences" after

Superior's dissolution and remanded the case for trial on the liability theory of Union Pacific's status as an "alter ego" of Superior. <u>Id.</u> at ¶ 7.

In the 2017 Case, the parties do not dispute that "[n]o witnesses to the <u>relevant events</u> were still alive (and none had been deposed)" and "[t]he trial consisted in large part of expert witnesses who reviewed the historical documents," with the Fund admitting "that the parties relied on historical documents and data and that neither party challenged the admissibility of the documents and data comprising the historical record." <u>See</u> d/e 66, ¶ 16; d/e 68, pp. 13, 28 (emphasis added). In the 2019 Opinion, Judge Schanzle-Haskins determined that, under the general rule of Illinois corporation law, the Chicago and North Western Railway Company was not liable for Superior's debts. <u>See</u> <u>Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co.</u>, No. 17-CV-3199, 2019 WL 4015883, at *20 (C.D. Ill. Aug. 26, 2019). Judge Schanzle-Haskins found that the Fund, which bore the burden of proof, failed to prove exceptions to the general rule of Illinois corporation law through the alter ego exception or the de facto merger exception. <u>Id.</u> at *20-*27.

In the <u>Hill</u> Complaint, the Fund alleged that "Union Pacific expressly assumed the liabilities associated with Superior's actions," "assumed the liabilities of Superior as a result of Superior being the alter ego of" Chicago and North Western Railway Company, or "is a successor to Superior's liabilities through related entity." d/e 66-4, ¶¶ 18, 20, 30. "The subsidence event was caused by failure in the portion of the Superior Mine Number 2" and damaged the Hills' property, and the Fund, as subrogee of the Hills and their insurer, "seeks to recover its losses from Union Pacific." <u>Id.</u> at ¶¶ 40, 41, 53.

Across all three of the Fund's cases, it is not the facts of a particular homeowner's mine subsidence claim, but the facts of Superior's dissolution and parent company Chicago and North Western Railway Company's merger into Union Pacific that the parties—and deciding judges—have consistently used to determine whether Union Pacific is liable to the Fund for subsidence claims arising from Superior's operations. <u>See</u> d/e 66, ¶¶ 4-6; d/e 68, p. 8; d/e 75, ¶ 4; d/e 76, p. 8. "[R]egardless of whether" the Fund's separate claims in <u>Gillespie</u>, the 2017 Case, and <u>Hill</u> "assert

different theories of relief," those claims all "arise from [that] single group of operative facts" so as to constitute the same cause of action under the "transactional test." <u>Walczak</u>, 739 F.3d at 1016–17 (7th Cir. 2014); <u>see</u> <u>also</u> <u>Cooney</u>, 2012 IL 113227, ¶ 21; <u>see</u> <u>also</u> <u>River Park</u>, 703 N.E.2d at 893. Since Superior's parent, Chicago and North Western Railway Company, merged into Union Pacific in 1995—well before any of the relevant litigation was filed—any of the theories of liability the Fund raised in the <u>Hill</u> Complaint "could have been" brought against Union Pacific from the outset and decided in <u>Gillespie</u> and the 2017 Case. <u>Id.</u>, <u>see</u> <u>also</u> d/e 75, ¶ 4; d/e 76, p. 8. That the 2017 Case had a "February 2018 deadline for amending pleadings and adding parties" is inapposite. d/e 75, pp. 12-14.

Therefore, the Court finds that, in the Fund's litigation against Union Pacific on claims the Fund acquired before the entry of judgment in prior cases, there has been "identity of claims" for purposes of claim preclusion. <u>Daza</u>, 2 F.4th at 683; <u>see</u> <u>also</u> <u>Hudson</u>, 889 N.E.2d at 213.

### 3. The 2019 Opinion Constitutes a Final Judgment on the Merits in the Fund's Litigation Against Union Pacific.

Lastly, Union Pacific argues that the 2019 Opinion constitutes a final judgment after trial satisfying the third requirement for claim preclusion. See d/e 66, p. 20. The Fund does not dispute this assertion or argue the issue. See d/e 68, d/e 75, d/e 77.

The parties agree that Judge Schanzle-Haskins ruled in favor of Union Pacific in the 2019 Opinion in the 2017 Case, deciding the "alter ego" and "de facto merger" theories of recovery against the Fund, as subrogee of the Bessermans and Bertolinos. See d/e 75, ¶ 7; d/e 76, p. 9. Judge Schanzle-Haskins issued the 2019 Opinion after a bifurcated bench trial, and judgment was entered in favor of Union Pacific and against the Fund. See Illinois Mine Subsidence Ins. Fund v. Union Pac. R.R. Co., No. 17-CV-3199, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019); see also id. at d/e 71. The Fund—as subrogee of the Bessermans and Bertolinos—filed, but later voluntarily dismissed, an appeal of the 2019 Opinion. See d/e 75, ¶ 7; d/e 76, p. 9.

Therefore, the Court finds that, in the Fund's litigation against Union Pacific on claims the Fund acquired before the entry of

judgment in prior cases, there was "a prior final judgment on the merits" for purposes of claim preclusion. <u>Daza</u>, 2 F.4th at 683; <u>see also</u> <u>Hudson</u>, 889 N.E.2d at 213.

In sum, Union Pacific sufficiently alleges claim preclusion under federal and Illinois law by establishing "(1) identity of parties, (2) identity of claims, and (3) a prior final judgment on the merits." <u>Id.</u> The Court issues a declaratory judgment that claim preclusion bars the Fund from litigating any claims the Fund acquired against Union Pacific before the judgment issued in <u>Illinois Mine Subsidence Insurance Fund v. Union Pacific Railroad Co.</u>, No. 17-CV-3199, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019).

Therefore, Union Pacific's Motion for Summary Judgment (d/e 65) is GRANTED, and the Fund's Motion for Summary Judgment (d/e 75) is DENIED as to Count I of the Second Amended Complaint seeking a declaratory judgment on claim preclusion grounds.

## C. Union Pacific Does Not Demonstrate That It Has Suffered an Irreparable Injury as Required to Seek a Permanent Injunction.

In Count III, Union Pacific requests an injunction in support of any declarations made in Count I, as well as the injunction that the Court in its March 31, 2022 Order held that Union Pacific may be

entitled to seek in the 2017 Case. Id. at ¶¶ 50–54; see also d/e 38, p. 21. Specifically, Union Pacific seeks injunctions, issued under the All Writs Act and the relitigation exception to the Anti-Injunction Act, related to the instant case—to the extent it prevails on Count I—and the 2017 Case, consistent with the Court's March 31, 2022 Order. Id.; see also 28 U.S.C. § 1651; 28 U.S.C. § 2283.

This Court follows the Seventh Circuit's finding and "presume[s] Union Pacific requests permanent injunctive relief." See d/e 73, see also Union Pac. R.R. Co. v. Illinois Mine Subsidence Ins. Fund, 138 F.4th 1045, 1052 (7th Cir. 2025). Whether to grant a permanent injunction is within this Court's discretion. Weinberger v. Romero–Barcelo, 456 U.S. 305, 320 (1982). This Court notes that both parties agree Hill is still pending in Macoupin County Circuit Court and is the only subsidence claim acquired by the Fund, as subrogee, prior to the 2019 Opinion on which the applicable statute of limitations has not run. See d/e 75, ¶ 8; d/e 76, pp. 8-9. Therefore, any injunctive relief granted here would only apply to the Hill case.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). "Since a permanent injunction is a form of relief on the merits, the plaintiff must also show not just a probability of success on the merits but actual success." Vaughn v. Walthall, 968 F.3d 814, 824–25 (7th Cir. 2020) (citing Winter, 555 U.S. at 32); see also eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) ("A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

**1. Union Pacific Succeeded on the Merits of its Complaint.**

The Fund argues that "if injunctive relief is to be allowed, it must be limited to barring use of the alter ego and de facto merger theories in the <u>Hill</u> case." d/e 75, p. 14.

However, Union Pacific has succeeded on the merits by virtue of this Court's declaratory judgment that claim preclusion bars the Fund from litigating any claims the Fund acquired against Union Pacific before the judgment issued in <u>Illinois Mine Subsidence Insurance Fund v. Union Pacific Railroad Co.,</u> No. 17-CV-3199, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019). <u>See</u> <u>Haaland v. Brackeen</u>, 599 U.S. 255, 293 (2023) (A declaratory judgment is meant "'to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by'" claim preclusion and "conclusively resolves 'the legal rights of the parties'") (quoting 18A CHARLES ALAN WRIGHT, ARTHUR MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4446 (3d ed. Supp. 2022); <u>Medtronic, Inc. v. Mirowski Family Ventures, LLC</u>, 571 U.S. 191, 200 (2014)).

Therefore, Union Pacific established its "actual success" on the merits of its claim. Vaughn, 968 F.3d at 824–25; see also Winter, 555 U.S. at 32.

### 2. Union Pacific Does Not Allege or Establish That It Has Suffered or Will Likely Suffer Irreparable Harm Absent Permanent Injunctive Relief.

The Fund argues that "no injunctive relief should be considered because Union Pacific has never demonstrated an inadequate remedy at law," "a prerequisite for permanent injunctive relief." d/e 75, p. 14. The Fund cites to Adkins v. Nestle Purina PetCare Co., 779 F.3d 481, 483 (7th Cir. 2015), in which the Seventh Circuit stressed that "[i]t is established that the costs of ongoing litigation…are not irreparable injury." Id.; see also F.T.C. v. Standard Oil Co. of California, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury") (internal citations omitted).

The Court notes that the Seventh Circuit previously held that "irreparable injury is not an independent requirement for obtaining a permanent injunction; it is only one basis for showing the inadequacy of the legal remedy." Crane by Crane v. Indiana High

Sch. Athletic Ass'n, 975 F.2d 1315, 1326 (7th Cir. 1992) (quoting

Jennings Water, Inc. v. City of N. Vernon, Ind., 895 F.2d 311, 318

n.6 (7th Cir. 1989) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR

MILLER, FEDERAL PRACTICE & PROCEDURE § 2944 at 401 (1973)).

However, the Supreme Court has more recently established—

and the Seventh Circuit has more recently followed—a standard in

both Winter and eBay that a plaintiff seeking injunctive relief "must

establish…that he is likely to suffer irreparable harm in the absence

of preliminary relief[.]" Winter, 555 U.S. at 20; see also eBay Inc.,

547 U.S. at 391 ("A plaintiff must demonstrate…that it has suffered

an irreparable injury" when seeking a permanent injunction); see

also United States v. Olson, 98 F.4th 840, 842 (7th Cir. 2024)

(citing Winter and eBay for the required factors for seeking a

permanent injunction); Adkins, 779 F.3d at 483 (citing Winter).

Union Pacific does not allege that it has suffered irreparable

harm requiring permanent injunctive relief in its Second Amended

Complaint, Motion for Summary Judgment and Memorandum in

Support, Reply to the Fund's Response to its Motion for Summary

Judgment, or Response to the Fund's Motion for Summary

Judgment. <u>See</u> d/e 42, d/e 65, d/e 66, d/e 69, d/e 76. Further, <u>Hill</u> is the only case potentially impacted by any permanent injunction here, and the Court does not see any harm from the face of Union Pacific's filings beyond "the costs of ongoing litigation" in <u>Hill</u>, which are categorically "not irreparable injury." <u>Adkins</u>, 779 F.3d at 483.

In sum, Union Pacific does not demonstrate "that it has suffered an irreparable injury" as required to seek a permanent injunction. <u>eBay Inc.</u>, 547 U.S. at 391; <u>see also Winter</u>, 555 U.S. at 20. Therefore, Union Pacific's Motion for Summary Judgment (d/e 65) is DENIED, and the Fund's Motion for Summary Judgment (d/e 75) is GRANTED as to Count III of the Second Amended Complaint seeking permanent injunctive relief.

## V.    CONCLUSION

For these reasons, Plaintiff Union Pacific Railroad Company's Motion for Summary Judgment (d/e 65) is GRANTED in part and DENIED in part and Defendant Illinois Mine Subsidence Insurance Fund's Motion for Summary Judgment (d/e 75) is GRANTED in part and DENIED in part.

As to Count I of the Second Amended Complaint (d/e 42), a claim is "acquired" when the Fund receives adequate documentation under the Act that the insurer has properly paid the claim and is entitled to reimbursement by the Fund. The Court issues a declaratory judgment that claim preclusion bars the Fund from litigating any claims the Fund acquired against Union Pacific before the judgment issued in <u>Illinois Mine Subsidence Insurance Fund v. Union Pacific Railroad Co.,</u> No. 17-CV-3199, 2019 WL 4015883 (C.D. Ill. Aug. 26, 2019). The Court does not reach the issues of issue preclusion or privity as they pertain to the Fund.

As to Count III of the Second Amended Complaint (d/e 42), this Court denies Union Pacific's request for permanent injunctive relief.

The Clerk is DIRECTED to issue a judgment reflective of this Order. All other pending motions are DENIED as MOOT. This case is closed.

**ENTERED: December 22, 2025.**

**FOR THE COURT:**

/s/ Sue E. Myerscough

**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**